**DEL LABORATORIES, INC., Plaintiff,**

v.

**UNITED STATES of America, Joseph A. Califano, Jr., Donald Kennedy, and the Food and Drug Administration, Defendants.**

Civ. A. No. 78–2267.

United States District Court,
District of Columbia.

March 31, 1980.

---

Raymond D. McMurray, Hamel, Park, McCabe & Saunders, Washington, D. C., for plaintiff.

Raymond W. Philipps, Dept. of Justice, Washington, D. C., for defendants.

## OPINION AND ORDER

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action seeking a declaratory judgment that an administrative decision by the Federal Food and Drug Administration (FDA) was arbitrary and capricious and not in accordance with law. The decision involved the refusal by the FDA to grant trade secret status to a certain cosmetic ingredient, hereinafter referred to as Ingredient 03 [1], following plaintiff's application for such status pursuant to the presubmission review procedures set forth in FDA's regulations. *See* 21 CFR § 20.44. Plaintiff alleges that the administrative record does not factually or legally support the determination made by FDA in this case, that the determination was arbitrary and capricious, and that plaintiff was denied due process of law under the Fifth Amendment to the Constitution. The case is now before the Court on defendant's motion for summary judgment.

### I

The underlying facts in this case are as follows: The Commissioner of Food and Drugs, under authority delegated to him by the Secretary of Health, Education and Welfare, promulgated regulations pursuant to the Fair Packaging and Labeling Act, 15 U.S.C. § 1451 et seq., requiring that the label on any package of cosmetic products state the ingredients in order of decreasing prominence. 21 CFR § 701.3(a). A particular cosmetic ingredient may be omitted from the label if the FDA determines that the ingredient is entitled to trade secret status pursuant to 21 CFR §§ 20.44 and 20.61 [2]. FDA's determination of trade se-

---

1. The ingredient is identified in the administrative record which has been placed under seal pursuant to the Protective Order entered by this Court on July 26, 1979.

2. 15 U.S.C. § 1454(c)(3)(B) provides that ingredients shall be listed in order of decreasing prominence "but nothing in this paragraph shall be deemed to require that any trade secret be divulged".

cret status is based on an evaluation of the manufacturer's voluntary submission of a Cosmetic Product Ingredient Statement (Form FD–1513), 21 CFR § 720.1, the request for confidentiality, material submitted in support thereof, and publicly available scientific literature. When FDA concludes that a particular ingredient is entitled to trade secret status, the phrase, "and other ingredients", may be used in lieu of identifying the ingredient on the label. 21 CFR § 701.3(a).

Plaintiff is the manufacturer and distributor of a cosmetic product bearing the trademark, Sally Hansen Dri Kwik. The cosmetic product manufactured by plaintiff is subject to the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., and regulations promulgated thereunder, in that they are "cosmetics" as defined by that Act, 21 U.S.C. § 321(i), and they are sold and distributed in interstate commerce.

Plaintiff filed a petition for Presubmission Determination of Confidentiality with FDA on March 15, 1976. However, the petition was returned to plaintiff on August 3, 1976, when plaintiff failed to include forms FD 2512 and 2512a.[3] Plaintiff refiled on September 22, 1976, and thereafter furnished yet additional information on March 31, April 27, and May 4, 1977.[4]

FDA issued a "Tentative Determination" on July 11, 1978 [5] preliminarily denying the request that Ingredient 03 be designated as a trade secret and stated as grounds for denial that "the request of confidentiality contains only claims of superior performance characteristics allegedly attributable to Ingredient 03 but offers no scientific, technical or other information whatsoever in support of such claims". The letter set forth examples of the claims made by plaintiff as follows:

No factual data are provided demonstrating the superiority of ingredient 03 over diethylphthalate to accomplish the unusual "performance characteristics" of the formulations in which it is used, nor that such formulations are demonstrably and significantly superior to "conventional" products. In addition, no information is given showing that ingredient 03 could not be readily identified by analytical means nor what measures are taken by the firm to safeguard the secrecy of this ingredient. All these are important factors in determining whether the identity of the ingredient meets the criteria of a trade secret and may therefore be exempted from public disclosure.

The letter also made reference to and attached thereto, the preamble to the final rules on public information published in the Federal Register of December 24, 1974 (39 Fed.Reg. 44612).

Plaintiff responded to the Tentative Determination in its letter of April 16, 1978 [6] in which it attached a list of competing products and listed their ingredients noting that the Ingredient 03 was not included in those products. With respect to the claimed superior performance, plaintiff stated "[t]he superior performance of Sally Hansen's Dri Kwik is well known both to the public and in the industry". Plaintiff also advised FDA that its laboratory had been unable to find a method by which Ingredient 03 can be identified in the finished product thereby demonstrating that competitors cannot analyze Dri Kwik to discover Ingredient 03, and briefly outlined the precautionary measures undertaken by plaintiff to maintain confidentiality.

A final determination was issued by FDA on November 16, 1978, in which the agency denied plaintiff's request that Ingredient 03 be classified a trade secret [7]. FDA referred

---

**3.** FDA wrote plaintiff concerning the failure to submit the requested forms on March 26, 1976, however, there is no record that plaintiff responded.

**4.** For reasons not clear from the record, the plaintiff had considerable difficulty submitting the required information.

**5.** Administrative Record Tab 10.

**6.** Administrative Record Tab 12.

**7.** Administrative Record Tab 16.

to plaintiff's submission of August 16, 1978, and noted that:

It does not offer any support whatsoever to your claims of superior performance characteristics of Sally Hansen Dry Kwik over the competitive products on which you based your request for confidentiality, nor does it demonstrate the alleged specific superiority of ingredient 03 over diethylphthalate. Without such evidence showing that ingredient 03 is important to the product and that competitors would benefit from discovery of its identity, the question of how readily it may be identified by analytical means is moot.

Plaintiff alleges that the action of the FDA in issuing its final determination denying plaintiff's request for a trade secret determination is arbitrary, capricious, and that it denied plaintiff due process of law under the Fifth Amendment.

## II

Plaintiff argues that the Court should deny the motion for summary judgment because there are outstanding issues of fact, see Fed.R.Civ.P. 56(c), and in support of its argument has filed a Statement of Genuine Issues setting forth ten factual issues. Those issues range from "[h]ow many reversals of the so-called 'tentative determination' have been made" by FDA, to whether Ingredient 03 can be identified by laboratory analysis and analytical determination. The Court finds plaintiff's argument in this regard without merit.

■ This case is not before the court for a trial de novo; rather, the Court is only required to determine, based upon the administrative record, whether the action of FDA in denying the claim for trade secret status was arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law. Camp v. Pitts, 411 U.S. 138, 142,

93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Thus while it is true that there may be outstanding issues of fact in this case, the pertinent question is whether there are issues of material fact; material or necessary to decide whether the administrative determination made in this case was in compliance with law.[8]

Moreover, FDA in denying the requested exemption, did not really rule on the merits of the claim since, in its view, plaintiff did not furnish sufficient information to support its claim that the product was superior. Due to the failure of plaintiff to furnish the requested information, FDA was either not in a position to consider the request, or made an assumption that there was no other information that plaintiff could supply in support of its claim.

Plaintiff's contention that there is a factual issue concerning whether FDA complied with the decision in Zotos International, Inc. v. Kennedy, 460 F.Supp. 268 (D.D.C. 1978), is also without merit. This Court can and has reviewed the administrative record and resolved that issue. The Court finds no issue of material fact in this case and cannot deny summary judgment on that grounds.

■ Plaintiff has filed two affidavits in this case in opposition to the motion for summary judgment which purport to answer the questions posed in FDA's final determination.[9] This Court cannot consider that information however, since the affidavits should properly have been filed with the agency after plaintiff received FDA's July 11 letter. Plaintiff presents no reason why the affidavits could not have been presented at that time or why, if additional time was required to undertake scientific or technical tests, an extension of time could not have been requested.

8. Some of the "factual" issues identified by the plaintiff are not factual issues at all, but are legal questions.

9. The affidavits, Opp. Exs. 1 and 2, are signed by Clyde V. Rockoff, of Pharmetics Laboratory, a Division of New Jersey Diary Laboratory Pharmetics, who conducted an analytical evaluation of various pharmaceutical and cosmetic products and is registered with FDA for that purpose. The affidavits set forth scientific and technical information and the results of tests which purport to support the plaintiff's claim of superiority for its product.

As has been noted, the case is not now before the Court for a trial de novo; the only issue is whether the denial of the claim was arbitrary, capricious or not according to law. *Camp v. Pitts, supra*; *Citizens to Preserve Overton Park, Inc. v. Volpe, supra.* The submission of the additional information in the form of affidavits in opposition to the defendant's motion for summary judgment does not therefore raise a factual issue. Such information should properly have been submitted to the agency which has the necessary expertise to evaluate the submission.

## III

■ FDA in support of its motion, contends that it has fully complied with the holding in *Zotos International, Inc. v. Kennedy, supra*, and *Carson Products Co. v. Califano*, 594 F.2d 453 (5th Cir. 1979).

The facts in *Zotos International* are somewhat similar to those in this case. There the petitioner had filed a request on May 17, 1976, seeking to have FDA grant trade secret status for a product formed by the reaction of two chemicals and used in certain cosmetics marketed by petitioner. On June 2, FDA advised petitioner that the petition had provided only qualitative information on the ingredient's chemical composition and that a "semi-quantitative formulation was needed in order for FDA to evaluate the request". Petitioner provided the formula to FDA in a letter dated June 15. FDA next communicated with petitioner on December 23, 1976, denying the request on the grounds that one of the ingredients was a "much referenced" agent widely used in home products and the agency cited five publications in support of its statement. 460 F.Supp. at 270. The petitioner was also advised that the letter constituted final agency action and that *Zotos* could appeal the agency action by filing a complaint in court within ten days.

The court in *Zotos* found that once the petitioner had filed its completed petition, which included the information requested by FDA's letter of June 2, the FDA entered a final decision denying the application without giving Zotos a chance to respond to the reasons given for the denial. "The brief exchange created serious practical disadvantages for Zotos", 460 F.Supp. at 277, in that Zotos was unable to consider the reasons for rejection cited by FDA and attempt to respond *before* a final determination. The Court found that due process requires that a petitioner have adequate notice and opportunity to participate before the decision becomes final and that the failure of the agency to afford that opportunity violated the due process clause of the Fifth Amendment. 460 F.Supp. at 278–279.

Defendants state in supporting memorandum, that they did not take an appeal from the decision in *Zotos* but instead adopted its reasoning and modified the agency's procedure to provide for a two step review. Memorandum of Law in support of defendant's motion for summary judgment, p. 6, note 5. They contend that such a two step review was provided in this case. This Court cannot agree.

In *Zotos* the petition was filed on May 16, 1976, and the agency concluded that it needed additional information before it could evaluate the request. Once Zotos furnished the requested information, or in effect, amended its petition, FDA was in the position to evaluate the claim on the merits. It did so in its letter of December 23, 1976, but in issuing a final determination effectively limited petitioner's chance to be heard on the stated grounds for the denial. Zotos was disadvantaged in never having a realistic opportunity to rebut the comments set forth in the rejection letter before the administrative action became final. "A petitioner must have some means, before an agency issues a final order, of engaging in a reasonably focused dialogue with the agency concerning the major points at issue in a trade secret request". 460 F.Supp. at 279. It was at this point that the court in *Zotos* contemplated a further chance for the petitioner to respond before a final determination. This response was to have been one on the merits. In other words, utilizing the procedures now adopted by FDA, the agency's letter of December 23, in *Zotos* would

have been the "tentative determination" and Zotos would have had one last opportunity to present a response and argument after which the agency could make its final determination. It is significant that in *Zotos* the agency wrote its December 23 letter only after having requested and been supplied with additional information which it felt necessary to make a decision on the merits.

Here the facts are different. Plaintiff filed its petition and in response to the petition FDA issued its July 11, 1977 tentative determination. That completed the first of the two steps now contemplated by the agency. The import of that letter however, was that plaintiff had not furnished the necessary information for FDA to make a determination on the merits. In effect, the July 11 letter informed plaintiff that the information furnished was inadequate and that additional information was required before a determination on the merits could be made. FDA by stating that the claim submitted by petitioner "offers no scientific, technical or any other information" in support of its claim of superiority was really suggesting that plaintiff must furnish more specific information before the claim could be properly evaluated. In this sense, FDA's letter of July 11 in this case was not unlike its letter of June 2 in *Zotos* in which it advised the petitioner that "a semi-quantitative formulation is needed for FDA to evaluate" the request. 460 F.Supp. at 270. It seems unlikely, however, that the court in *Zotos* would have reached a different result in that case had FDA's June 2 letter been designated a tentative determination. Its result would have been the same simply because plaintiff had no opportunity to engage in a reasonably focused dialogue with the agency concerning the major points at issue prior to the final determination.

It seems reasonable to conclude that if FDA had followed the procedure suggested in *Zotos*, it would have written and requested scientific and technical support for the plaintiff's claims of superiority of its product and *then* upon receipt of such information, FDA could have reviewed the information, evaluated it, and made a tentative ruling on the merits. If that ruling had been adverse, the plaintiff would have had thirty days, or more if extended by FDA, in which to respond to the tentative determination before the entry of a final decision by the agency. What FDA has done in this case is to merely label a letter requesting further information as its tentative determination and has effectively shortcut the two step procedure suggested in *Zotos* and adopted by the FDA, to one step. This plaintiff is in no better position than the petitioner was in *Zotos* and this being the case it follows that it has been denied the opportunity to effectively participate in the administrative proceeding before final agency action. Plaintiff thus has been denied due process and under the circumstances the action of the agency was arbitrary and capricious.

The fact that the FDA labeled the July 11 letter a tentative determination does not make it so. A determination contemplates a decision on the merits, a decision which, when once made, would allow an applicant to attempt to rebut or explain or present other evidence before final agency action. The statute, 15 U.S.C. § 1454(c)(3)(B), provides that nothing in the Fair Packaging and Labeling Program "shall be deemed to require that any trade secret be divulged", and as the court in *Zotos* pointed out, that trade secret is a property interest. 460 F.Supp. at 272. The regulations promulgated under the statute should be designed to allow the agency to make a bona fide attempt to determine whether the ingredient is entitled to trade secret status and wherever possible, that determination should be based on a fair and full consideration of all relevant facts, reports, and scientific and technical information. The procedure is not to be lightly undertaken and the agency should promulgate such regulations as are necessary to insure that petitioners are fully advised as to what is required in support of their petitions.

There will be, of course, cases where notwithstanding such regulations, the agency will be required to request additional infor-

mation and in those cases it should do so without designating such a letter a tentative determination and shortcutting the entire procedure. A petitioner should not be required to forfeit one of the two steps merely because its original petition does not contain information which the agency deems necessary for its determination as to trade secret status. Such an approach would appear to expedite the total process and limit the number of complaints filed with the Court.[10]

To summarize, this Court concludes that although the agency has adopted the suggestions contained in *Zotos* and provided for a two step process, they have not effectively carried that procedure out in this case since by designating their request for information as a tentative determination, they have returned to the very procedure that was criticized in *Zotos*.[11]

## IV

FDA argues that to require it to do more than was done in this case would unnecessarily delay its decisions in cases where it is acting on a request for trade secret status. Its argument also implies that the fault is with plaintiff and that plaintiff should have known what information was required.

The agency has a responsibility both to the manufacturer that seeks trade secret status and to the consuming public. Quite often the manufacturer has developed a product at considerable time and expense in order to acquire a competitive advantage at the market place. Plaintiff alleges that Ingredient 03 makes the product, Sally Hansen Dri Kwik, superior to competing products, that laboratory tests run on the finished product would not yield up the true identity of Ingredient 03, and that it has taken elaborate precautions to keep the identity of Ingredient 03 confidential. The agency has a responsibility to fairly determine whether the ingredient should be granted trade secret status since, if it is a true trade secret, the ingredient need not and should not be disclosed. *See* 15 U.S.C. § 1454(c)(3)(B).

On the other hand, the agency has a duty to the consuming public. The purpose of the Fair Packaging and Labeling Program is to enable informed consumers to obtain accurate information as to the identity and the quantity of the contents of the product and to facilitate value comparisons. 15 U.S.C. § 1451. The Program also prevents unfair and deceptive packaging, 15 U.S.C. § 1452, and permits a consumer to avoid products to which he may be sensitive or allergic.

This Court has carefully weighed the above factors and finds that the FDA can institute a procedure, fully consistent with *Zotos International Inc. v. Kennedy, supra*, and the two step process, without causing any appreciable delay in its overall decision making responsibility. When FDA receives a request for trade secret status which is complete and contains all of the information the agency finds is necessary and relevant for a decision, the agency may then make its tentative determination and after notice, and a chance for petitioner to respond to the tentative determination, issue its final determination.

■ In the case of a petition which does not contain the necessary or relevant information for an informed decision by the agency, FDA should so advise the petitioner, setting forth to the extent possible the additional facts, tests or information which would be required to allow the agency to make its determination and then afford the

---

10. The Court does not suggest here that unlikely number of complaints have been filed as the result of agency action.

11. While reaching this conclusion in this case, the Court must note that this plaintiff was not diligent in pursuing its claim and was a cause of much of the delay in the agency reaching what it entitles was its final determination. The procedures suggested to the Court would not allow for such a delay, and would expedite the final decision by the agency while yet providing petitioners with a clear two-step process along the lines suggested in *Zotos*. Regardless of the recalcitrance of this plaintiff, the Court must judge the procedure by what is required by due process of law. The fact that this plaintiff may benefit, even though it may have contributed to the delay, is of no moment.

petitioner a reasonable time within which to furnish the information. It seems wise for the agency to set forth specific time limits for a reply which the agency can extend for an additional reasonable time upon a timely request by a petitioner. The agency, in bringing a defect to the attention of the petitioner, may also wish to advise the petitioner that failure to furnish the information within the time frame allowed, in the absence of an extension of time by the agency, would mean that the agency deems the petition withdrawn thereby setting into motion the eventual publication of the name of the subject ingredient. In such cases it would not be necessary for the agency to consider the claim on the merits since the claim has been withdrawn.

The above procedures would not delay the process and would allow a petitioner to fully present his claim. The procedure would not leave the agency helpless to deal with a recalcitrant petitioner since firm time limits can be established for the submission of any additional information required to complete the petition, and if not submitted, the agency may then, as indicated above, deem the petition withdrawn where it cannot make an initial determination on the merits, or enter its tentative determination, where there is sufficient information to make such an initial determination.

The actual procedure to be utilized by the agency should be established and included in its regulations consistent with the Court's comments. Had the FDA utilized such a procedure in the present case, the time period could have been considerably shortened, keeping in mind that the present matter was pending before the agency for almost two years.

Counsel for FDA stated during oral argument that even if plaintiff had furnished the information as to the superiority of the product, that yet additional information may have been necessary before the application could be approved—thus in any event the process was not complete. Reason would dictate that an initial request for information refer to any and all information, tests or reports required rather than take a piecemeal approach.

The Court further notes that the regulations cited to the Court by the agency do not specifically set forth a clear guideline for use by petitioners applying for trade secret status. The agency should give consideration to reviewing those regulations and modifying them so that the requirements of *Zotos* are clearly set forth.

V.

For the reasons set forth in this opinion, the Court concludes that FDA has not afforded petitioner due process of law, as discussed in *Zotos International Inc. v. Kennedy, supra* and that the final determination denying plaintiff's request for trade secret status was arbitrary and capricious.

Plaintiff's request that the Court make the determination that it is entitled to trade secret status without further reference to the agency is without merit. The Court has concluded that the agency has not given due consideration to the petition and that the agency, which is after all the "expert", should be afforded that opportunity. Therefore the case will be remanded to the agency for further action not inconsistent with this Opinion and Order. Upon receiving the petition, the agency shall advise plaintiff of any and all additional test information or reports which are required in order for the agency to make its determination on the merits. The agency shall afford the plaintiff a reasonable time to respond but should set a definite time in which the plaintiff must answer. If the plaintiff fails to respond within that time, the agency may treat the petition as being withdrawn and proceed to set into motion the process of publishing the ingredient, or, if the information is sufficient to make a determination on the merits, issue its tentative determination.[12]

---

12. This plaintiff is on notice as to the nature of the information which has been requested up to this point and the Court can see no reason why it cannot forthwith furnish the agency with the requested information so that a tentative determination can be made.

In the event the agency issues a tentative determination, the plaintiff shall have one last opportunity to respond before the agency's final determination.

### ORDER

It is hereby

ORDERED that defendant's motion for summary judgment is denied, and it is further

ORDERED that the plaintiff's request for a determination of trade secret status for Ingredient 03 is remanded back to the agency for action consistent with this Opinion and Order.

