**NATIONAL ORGANIZATION FOR WOMEN, WASHINGTON, D.C. CHAPTER**

v.

**SOCIAL SECURITY ADMINISTRATION OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al. Prudential Insurance Company of America, Appellant.**

Nos. 76–2119, 76–2128, 76–2129, 76–2163, 77–1161, 77–1269 and 77–1270.

United States Court of Appeals, District of Columbia Circuit.

Argued May 1, 1980.

Decided May 25, 1984.

As Amended July 2, 1984.

Margaret A. Kohn, Washington, D.C., was on the brief, for National Organization for Women, appellants in No. 77–1161 and cross-appellants in Nos. 76–2119, 76–2128, 76–2129, 76–1269 and 77–1270. Collot Guerard, Washington, D.C., also entered an appearance for National Organization for Women, cross-appellants in Nos. 76–2119, 76–2128, 76–2129, 76–2163, 77–1269 and 77–1270.

Douglas N. Letter, Washington, D.C., with whom Alice Daniel, Acting Asst. Atty. Gen., Civil Division, Dept. of Justice, Carl S. Rauh, U.S. Atty., Washington, D.C., at the time the brief was filed, and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief for Social Security Administration of the Department of Health and Human Services, et al., cross-appellants in Nos. 77–1269 and 77–1270, and appellees in Nos. 76–2119, 76–2128, 76–2129, 77–1161 and 76–2163. John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, Richard A. Graham and Joseph Guerrieri, Jr., Asst. U.S. Attys., and Frederic D. Cohen, Atty., Dept. of Justice, Washington, D.C., also entered appearances for Social Security Administration, et al., cross-appellants in Nos. 77–1269 and 77–1270 and appellees in Nos. 76–2119, 76–2128, 76–2129, 77–1161 and 76–2163.

Michael S. Horne, Washington, D.C., with whom Jerome Ackerman and Bruce D. Sokler, Washington, D.C., for Prudential Insurance Company, J. Austin Lyons, Margaret F. Kelly, New York City, and James F. Bromley, Rockville, Md., for Metropolitan Life Insurance Company, and William F. Joy, Robert P. Joy, Boston, Mass., for John Hancock Mutual Life Insurance Company, were on the joint brief for the insurance company appellees and cross-appellants in Nos. 76–2119, 76–2128, 76–2129, 76–2163, 77–1161, 77–1269 and 77–1270.

Before ROBINSON, Chief Judge, MIKVA, Circuit Judge, and McGOWAN, Senior Circuit Judge.

Opinion filed PER CURIAM.

Opinion filed by Chief Judge SPOTTSWOOD W. ROBINSON, III, concurring in affirmance.

Opinion filed by Circuit Judge MIKVA and Senior Circuit Judge McGOWAN concurring in affirmance.

PER CURIAM:

█ The judgment of the District Court is affirmed. Chief Judge Robinson concurs for the reasons set forth in his opinion. Circuit Judge Mikva and Senior Circuit Judge McGowan concur for the reasons set forth in their opinion. The case is remanded to the District Court for further proceedings in accordance with instructions set forth in the opinion of Circuit Judge Mikva and Senior Circuit Judge McGowan.

SPOTTSWOOD W. ROBINSON, III, Chief Judge:

A federal regulatory agency ruled that documentary matter collected from regulatees is subject to public examination pursuant to the Freedom of Information Act (FOIA).[1] The District Court, after reviewing the agency's decision de novo, issued a preliminary injunction barring release of much of the material.[2] In that court's view, there is a substantial probability that the data thus impounded are removed from FOIA's disclosure mandate by Exemptions 4 and 6,[3] and that the proscriptions of the Trade Secrets Act[4] would brand voluntary

---

1. 5 U.S.C. § 552 (1982).

2. *Metropolitan Life Ins. Co. v. Usery*, 426 F.Supp. 150 (D.D.C.1976), *cert. before judgment denied sub nom. Prudential Ins. Co. v. National Org. for Women*, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977).

3. *Id.* at 158–159, 167.

4. 18 U.S.C. § 1905 (1982).

agency divulgence an abuse of discretion.[5] We are asked to dissolve the court's injunction.

I would hold that de novo review on questions of exemption by FOIA was proper in the context in which it occurred,[6] and would leave undisturbed the District Court's determinations on the scope of the FOIA exemptions involved and the reach of the Trade Secrets Act.[7] I would conclude, however, that the court should not have undertaken to gauge, without prior assessment by the agency itself, the propriety of voluntary disclosure of items ostensibly exempted from FOIA's purview and left unprotected by the Trade Secrets Act.[8] I thus would remand for further proceedings.

## I. BACKGROUND

### A. *The Regulatory Scheme*

The three major insurance companies litigating here[9] are contractors with the Federal Government. As such, the companies are subject to Executive Order 11246,[10] which requires the Secretary of Labor to ensure that contractors' workforces are free from employment discrimination based on race, sex, religion or national origin. The Secretary has delegated this responsibility to the Office of Federal Contract Compliance Programs (OFCCP).[11] When the cases at bar germinated, a number of federal entities served as "compliance agencies" monitoring equal employment opportunity within various geographical areas and industrial classifications. The unit so designated for the insurance industry was the Insurance Compliance Staff (ICS) of the Social Security Administration.[12]

OFCCP rules require government contractors to file annual statements, known as EEO-1 reports,[13] detailing the number of women and minority-group members working in specified job categories.[14] Additionally, each contractor must prepare an affirmative action plan projecting the employment of women and minorities, and establishing goals and timetables for correcting deficiencies.[15] Each contractor's affirmative action program is audited periodically, and on-site reviews are conducted when the contractor's submission is deemed unsatisfactory.[16] The results of these audits and reviews are then compiled in compliance review reports.[17]

The Department of Labor has promulgated regulations on disclosure of data obtained or generated pursuant to Executive Order 11246.[18] These rules instruct OFCCP to release such information voluntarily upon request—unless legally forbidden, but notwithstanding the availability of a FOIA exemption from mandatory release—whenever doing so would further the public interest and would not impede the agency's functions.[19] If, however,

---

5. *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 170.

6. Discussed in Part II *infra.*

7. Discussed in Part III *infra.*

8. Discussed in Part III *infra.*

9. See note 26 *infra.*

10. 30 Fed.Reg. 12,319 (1965), as amended by Exec. Order No. 11375, 32 Fed.Reg. 14,303 (1967), *reprinted after* 42 U.S.C. § 2000e (1976 & Supp. V 1981).

11. 41 C.F.R. § 60–1.2 (1983).

12. Contract-compliance authority has since been consolidated in OFCCP. See Exec. Order No. 12086, 43 Fed.Reg. 46,501 (1978), *reprinted after* 42 U.S.C. § 2000e (Supp. V 1981).

13. See Joint Appendix (J.App.) 280 (reprint of blank EEO-1 report).

14. 41 C.F.R. § 60–1.7 (1983). Certain contractors, primarily those with small workforces or low dollar-value government contracts, are exempt from this requirement. *Id.* § 60–1.7(a)(1).

15. *Id.* § 60–1.40 & pt. 60–2.

16. *Id.* § 60–60.3.

17. *Id.*

18. *Id.* pt. 60–40.

19. *Id.* § 60–40.2(a). See also *id.* § 60–40.2(b). It is specifically provided that contractors' EEO-1 reports "shall be disclosed pending further instructions from the Director." *Id.* § 60–40.4.

these two preconditions are not met, the agency must withhold FOIA-exempt portions of affirmative action plans, such as goals and timetables, constituting confidential commercial or financial information "because they indicate, and only to the extent that they indicate, that a contractor plans major shifts or changes in his personnel requirements and he has not made this information available to the public." [20] Also to be withheld, absent satisfaction of the two preconditions, is FOIA-exempt information on staffing patterns and pay scales in affirmative action plans, but only insofar as divulgence "would injure the business or financial position of the contractor, would constitute a release of confidential financial information of an employee or would constitute an unwarranted invasion of the privacy of an employee." [21]

With these and other limited exceptions,[22] the regulations thus favor voluntary disclosure of contract-compliance information—even that which, because exempt under FOIA, OFCCP is not compelled to reveal. Recognizing, however, that submitters of EEO–1 reports and affirmative action plans may have a justifiable interest in maintaining the confidentiality of particular data, the regulations also provide a process by which a contractor may solicit protection.[23] An administrative determination on applicability of a FOIA exemption, or on discretionary release of exempt information, thus may arise either from a third-party demand for disclosure or a contractor's request for nondisclosure.

### B. *The Administrative Proceedings*

Metropolitan Life Insurance Company presented to ICS a statement seeking to preserve the confidentiality of portions of its affirmative action plans,[24] and ICS began to proceed under the regulations.[25] Shortly thereafter, the District of Columbia Chapter of the National Organization for Women (NOW) requested all EEO–1 reports, current affirmative action plans and compliance review reports pertaining to four insurance companies, including Metropolitan.[26]

ICS notified the companies of NOW's application and offered each an opportunity to demonstrate that, under the guidelines supplied by the regulations, the information sought should not be revealed. At the same time, ICS asked NOW for clarification of the scope of its demand.[27] NOW treated this response as the equivalent of a denial and instituted an administrative appeal,[28] but ICS continued to consider NOW's bid along with oppositions presented by the companies. Somewhat later, ICS, addressing the companies' challenges, informed them of its decision to release most of the data requested.[29]

Resorting both to FOIA and the OFCCP regulations, ICS believed that a few items in the affirmative action plans should be excluded from NOW's inspection because public availability would cause competitive harm.[30] ICS also felt that additional items should be withheld because their release

---

**20.** *Id.* § 60–40.3(a)(1).

**21.** *Id.* § 60–40.3(a)(2).

**22.** Information in four additional categories is treated similarly to staffing patterns and pay scales. *Id.* § 60–40.3(a)(3) to (a)(6). Apparently, none of these provisions is pertinent to any inquiry here.

**23.** *Id.* § 60–60.4(d). This procedure is described in Part II(C) *infra*.

**24.** J.App. 46–47.

**25.** J.App. 51.

**26.** J.App. 30. The companies are John Hancock Mutual Life Insurance Company, Metropolitan Life Insurance Company, Prudential Life Insur-

ance Company of America and Equitable Life Assurance Society. The first three, but not the fourth, have challenged the agency decisions.

**27.** J.App. 31–33.

**28.** ICS had indicated to NOW that this was an available alternative. See J.App. 32.

**29.** J.App. 284–323.

**30.** See, *e.g.*, J.App. 292 (organizational chart of Wichita Electronic Installation Center); J.App. 293 (portion of affirmative action plan for Las Posas District sales office withheld because of potential for "raiding" clerical staff).

conceivably could result in unwarranted invasions of personal privacy.[31] As to the remainder, however, ICS rejected company arguments that particular FOIA exemptions applied, and ordered disclosure.[32] The companies appealed to the Director of OFCCP,[33] who substantially affirmed ICS' decision.[34]

## C. *The Judicial Proceedings*

While its efforts at the agency level continued, Metropolitan instituted an action in the District Court for the Southern District of New York, and sought a temporary restraining order blocking release of its affirmative action statistics until administrative remedies could be exhausted.[35] Counsel for the Government [36] stipulated that no disclosure would take place until five days after full resort through those channels, and the other companies were subsequently assured of similar treatment.[37] Resultantly, though Metropolitan's lawsuit remained pending, its request for the restraining order was withdrawn.[38]

Several months later, after pursuing its own administrative remedies, NOW initiated a separate action in the District Court for the District of Columbia [39] to compel ICS officials to reveal the data in dispute.[40] After a contest over venue, the two cases were consolidated in the District of Columbia.[41] Only after both suits commenced did ICS resolve to unveil substantial portions of the material sought by NOW.[42] Following affirmance of this decision on administrative appeal, the companies applied to the District Court in the consolidated litigation for a temporary restraining order barring release pending a hearing on a motion for a preliminary injunction.[43]

The restraining order issued, and the court heard evidence on the matter of interim injunctive relief.[44] The court later handed down its order granting a partial preliminary injunction.[45] The court agreed with the agency that FOIA Exemptions 3 [46] and

---

**31.** See, *e.g.*, J.App. 291 (identification of employee, when employee's name appeared in document in connection with evaluation of his or her job performance).

**32.** In doing so, ICS rejected claims grounded not only on Exemption 4, but also on Exemptions 3, 6 and 7. See J.App. 286–287, 288–289, 290, 291, 304–305. These exemptions are codified at 5 U.S.C. § 552(b)(3), (4), (6), (7) (1982).

**33.** See 41 C.F.R. § 60–60.4(d) (1983).

**34.** J.App. 324–337. The Director also ordered release of certain data withheld by ICS.

**35.** See Complaint, J.App. 326 (Metropolitan), 336 (Hancock). *Metropolitan Life Ins. Co. v. Dunlop*, Civ. No. 75–4182 (S.D.N.Y.) (filed Aug. 22, 1975), J.App. 34–45.

**36.** Aside from NOW and the three insurance companies, the Department of Health and Human Services and five federal officials are litigants in this case. For convenience, I refer to the federal parties collectively as "the Government."

**37.** See J.App. 32.

**38.** See J.App. 32. Withdrawal was accomplished by means of a stipulation, appended as an exhibit to one of the pleadings.

**39.** Although ICS had not then reached a decision on the merits of NOW's request, administrative remedies were considered exhausted because the agency had not met the applicable time limit set out in 45 C.F.R. §§ 5.81, 5.85(c) (1983). Complaint, *National Org. for Women v. Social Sec. Admin.*, Civ. No. 76–0087 (D.D.C.), (filed Jan. 16, 1976) ¶ 26, J.App. 22. See 5 U.S.C. § 552(a)(6)(C) (1982).

**40.** See Complaint, *supra* note 39, J.App. 14–33.

**41.** *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 155.

**42.** *Id.* & n. 5.

**43.** Motion for Temporary Restraining Order, for Preliminary Injunction and for Protective Order, *Metropolitan Life Ins. Co. v. Usery*, Civ. No. 76–914 (D.D.C.) (filed July 16, 1976), J.App. 105–107.

**44.** See *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 155 & n. 8.

**45.** *Id.* at 156.

**46.** At the time the District Court rendered its decision, Exemption 3 pertained to information "specifically exempted from disclosure by statute." Act of June 5, 1967, Pub.L. No. 90–23, § 552(b)(3), 81 Stat. 54, 55. Subsequent to the District Court's ruling, this exemption was narrowed to information "specifically exempted from disclosure by statute (other than [the open

7 [47] did not apply,[48] but rejected agency arguments that Exemptions 4 [49] and 6 [50] were likewise inoperative.[51] The court perceived a substantial likelihood that the companies ultimately would prevail on the merits of some of their exemption claims, finding that release of workforce analyses, department lists, and statistical and narrative data on projected promotions could seriously endanger competitive positions by subjecting the companies to increased risks of employee "raiding" and adverse effects on productivity.[52] The court was also impressed by the companies' contention that divulgence of various other items could trespass upon personal privacy because of the possibility that these data could be connected to particular individuals.[53] The court took live testimony as well as the agency record into account,[54] and its findings were independent determinations.

Because information exempted by FOIA from mandatory disclosure may nevertheless remain open to discretionary revelation by an agency,[55] the District Court went on to consider whether the data-releasing deci-

sions made administratively impinged upon the Trade Secrets Act or otherwise amounted to an abuse of agency discretion, and answered both aspects of that question in the affirmative.[56] Concluding that the companies had shown a substantial probability of successfully resisting disclosure, the court weighed other factors bearing on the propriety of preliminary injunctive relief—injury to the parties, respectively, and pertinent facets of the public interest [57]—and held that relief of that character was warranted.[58]

The injunction issued accordingly. In practical effect, it precludes release of the bulk of the affirmative action plans, and the compliance review reports to the extent that the latter incorporate data contained in the plans.[59] The District Court held that the disclosures permitted "should be sufficient to foster [the] goals" of equal opportunity.[60] NOW contends, however, that the material made available will be of little if any value without the portions withheld.[61]

meeting provisions of 5 U.S.C. § 552b] ), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." Government in the Sunshine Act, Pub.L. No. 94–409, § 5(b), 90 Stat. 1241, 1247 (1976), codified at 5 U.S.C. § 552(b)(3) (1982).

47. Exemption 7 relates to investigatory records compiled for law enforcement purposes. See 5 U.S.C. § 552(b)(7) (1982).

48. *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 157–158, 169–170.

49. Exemption 4 extends to "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) (1982).

50. Exemption 6 applies to personnel, medical and similar files "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6) (1982).

51. See *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 158–165, 166–169.

52. *Id.* at 160–166.

53. *Id.* at 166–169.

54. *Id.* at 157 & n. 8.

55. *Chrysler Corp. v. Brown,* 441 U.S. 281, 290–294, 99 S.Ct. 1705, 1712–1714, 60 L.Ed.2d 208, 218–220 (1979); *Charles River Park "A", Inc. v. HUD,* 171 U.S.App.D.C. 286, 292, 519 F.2d 935, 941 (1975). See also *Worthington Compressors, Inc. v. Costle,* 213 U.S.App.D.C. 200, 209, 662 F.2d 45, 54 (1981).

56. *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 170–172.

57. *Id.* at 172–173.

58. *Id.*

59. The injunction did permit, however, disclosure of all EEO–1 reports, and some portions of the affirmative action plans and compliance review reports. *Id.* at 157.

60. *Id.* at 173.

61. NOW claims that "what remains is largely the training data, information on hires and terminations and past promotions, census data on workforce availability, and general policy statements which alone have extremely limited value for D.C. NOW's purposes." Brief for NOW at 6 (footnote omitted). NOW states, for example, that the injunctive order tolerates release at

The parties have tendered for our consideration a number of problems, most of which are beyond the range of our proper function. The appeals before us emanate, not from a final disposition of the controversy by the District Court, but from a preliminary injunction designed to preserve the status quo pending that court's decision on the merits,[62] and the scope of review is correspondingly limited. We have hitherto observed that "[w]hile the probability of success on the merits is a factor to be considered on a motion for preliminary injunction, such an application 'does not involve a final determination of the merits,' but rather 'the exercise of a sound judicial discretion' on the need for interim relief." [63] It is for this reason that we have frequently reminded that we "will not set aside the action of [the] District Court in either denying or granting an application for a preliminary injunction unless the action of the District Court was in clear error or in [*sic*] abuse of discretion," [64] and that we ordinarily "do not consider the merits of the case further than necessary to determine whether that discretion was abused." [65] These constraints limit the issue properly before us to relatively few.

## II. METHODOLOGY OF REVIEW

In disposing of the companies' injunctive motion, the District Court convened a hearing, at which it admitted evidence on the effects that public release of the companies' data would have on their business operations.[66] The court weighed that evidence, and freely substituted its factual assessments for those previously made administratively.[67] Then, to the factual situation so constructed, the court applied legal principles as it perceived them, and held that, as a matter of substantial probability, the information sought by NOW largely would be insulated from mandatory disclosure, primarily by FOIA Exemption 4 [68] and to a lesser extent by Exemption 6.[69]

These determinations, in their factual as well as their legal components, thus were made de novo,[70] and that, it is contended,

---

most of but 15 pages of one affirmative action plan comprising 117 pages, and 60 to 70 pages of another consisting of 232 pages. *Id.* at 6 nn. 8 & 9.

**62.** The application for the preliminary injunction was not consolidated with trial on the merits, as it might have been. See Fed.R.Civ.P. 65(a)(2); *Industrial Bank v. Tobriner,* 132 U.S. App.D.C. 51, 54, 405 F.2d 1321, 1324 (1968). We have been informed that the District Court suggested consolidation, but that both NOW and the Government objected. Brief for Insurance Companies at 24.

**63.** *Industrial Bank v. Tobriner, supra* note 62, 132 U.S.App.D.C. at 54, 405 F.2d at 1324, quoting *Public Serv. Comm'n v. Wisconsin Tel. Co.,* 289 U.S. 67, 70, 53 S.Ct. 514, 515, 77 L.Ed. 1036, 1038 (1933). See notes 138–140 *infra* and accompanying text.

**64.** *Cox v. Democratic Cent. Comm.,* 91 U.S.App. D.C. 416, 200 F.2d 356 (1952). Accord, *Jones v. District of Columbia Redev. Land Agency,* 162 U.S.App.D.C. 366, 371, 499 F.2d 502, 507 (1974); *Maas v. United States,* 125 U.S.App.D.C. 251, 254–255, 371 F.2d 348, 351–352 (1966); *Young v. Motion Picture Ass'n of Am., Inc.,* 112 U.S.App. 35, 37, 299 F.2d 119, 121, *cert. denied,* 370 U.S. 922, 82 S.Ct. 1565, 8 L.Ed.2d 504 (1962). See also *Brown v. Chote,* 411 U.S. 452, 457, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420, 424 (1973).

**65.** *Maryland-Nat'l Capital Park & Planning Comm'n v. United States Postal Serv.,* 159 U.S. App.D.C. 158, 164, 487 F.2d 1029, 1035 (1973). Accord, *Jones v. District of Columbia Redev. Land Agency, supra* note 64, 162 U.S.App.D.C. at 371, 499 F.2d at 507; *Industrial Bank v. Tobriner, supra* note 62, 132 U.S.App.D.C. at 54, 405 F.2d at 1324; *Maas v. United States, supra* note 64, 125 U.S.App.D.C. at 255, 371 F.2d at 352; *Young v. Motion Picture Ass'n of Am., Inc., supra* note 64, 112 U.S.App.D.C. at 37, 299 F.2d at 121.

**66.** *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 170–172.

**67.** *Id.* at 155 n. 8, 158–160.

**68.** *Id.* at 160–166.

**69.** *Id.* at 166–169.

**70.** When I speak of "de novo review," I refer to " 'the distinction between a de novo trial, where the case is tried a second time and the record is made up in the district court, and a court's review of findings of an administrative body, where the record is solely that of the administrative body.' " *Local 777, Democratic Union Org. Comm. v. NLRB,* 195 U.S.App.D.C. 280, 310, 603 F.2d 862, 892 (1978), quoting *Globe-Union, Inc. v. Chicago Tel. Supply Co.,* 103 F.2d 722, 728 (7th Cir.1939). It was in that vein that in *Local*

was error. The claim is that, in deciding whether particular material fell within a FOIA exemption, the District Court should have confined itself to the record as developed administratively, and should have upheld the agency rulings unless they reflected some abuse of discretion or some mistake of law. Consequently, so the argument goes, the District Court went astray when it took new evidence into account, and again when it made factual findings of its own.

It is true that "in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, ... consideration is to be confined to the administrative record and ... no *de novo* proceeding may be held." [71] It is also true that support for the theory espoused by the companies' opponents can be found in judicial decisions [72] and legal commentary.[73] I think, however, that Congress has specified the procedure appropriate for the situation here, and that,

in the circumstances presented, the District Court's technique was eminently correct.

## A. *The Issue*

I begin my analysis by sharply defining the problem. The companies' right to judicial review of OFCCP's disclosure decision rests wholly on Section 10 of the Administrative Procedure Act (APA).[74] It follows necessarily that Section 10 dictates the terms upon which the review was to be conducted, and, when that section is examined, any uncertainty as to the propriety of independent *legal* rulings by the court is immediately eliminated. Section 10 provides that "[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law [and] interpret ... statutory provisions...." [75] This directive accords with the traditional understanding that questions of law,[76] and statutory meanings as questions of law,[77] are for courts, not agencies. While on legal inquiries,[78] including

777 we held that a court determining whether uncontroverted facts, when tested by settled principles of law, are sufficient to warrant agency action does not engage in de novo review of the agency's decision. 195 U.S.App.D.C. at 310, 603 F.2d at 892.

**71.** *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652, 657 (1963). See also *Doraiswamy v. Secretary of Labor,* 180 U.S.App.D.C. 360, 367–371, 555 F.2d 832, 839–843 (1976).

**72.** See, *e.g., Chrysler Corp. v. Schlesinger,* 611 F.2d 439, 440 (3d Cir.1979) (opinion on remand). *Cf. General Motors Corp. v. Marshall,* 654 F.2d 294, 298–299 (4th Cir.1981).

**73.** See, *e.g.,* Campbell, *Reverse Freedom of Information Act Litigation: The Need for Congressional Action,* 67 Geo.L.J. 103, 136–143 (1978); Clement, *The Rights of Submitters to Prevent Agency Disclosure of Confidential Business Information: The Reverse Freedom of Information Act Lawsuit,* 55 Tex.L.Rev. 587, 628–633 (1977); Note, *The Reverse FOIA Suits After Chrysler: A New Direction,* 48 Fordham L.Rev. 185, 190–191 (1979).

**74.** *Chrysler Corp. v. Brown, supra* note 55, 441 U.S. at 317–318, 99 S.Ct. at 1725–1726, 60 L.Ed.2d at 234–235.

**75.** 5 U.S.C. § 706 (1982).

**76.** *E.g., FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 145, 60 S.Ct. 437, 442, 84 L.Ed. 656, 663 (1940); *FPC v. Pacific Power & Light Co.,* 307 U.S. 156, 160, 59 S.Ct. 766, 768, 83 L.Ed. 1180, 1183 (1939); *Retail Store Union v. NLRB,* 151 U.S.App.D.C. 209, 219, 466 F.2d 380, 390 (1972).

**77.** *E.g., Railroad Retirement Bd. v. Bates,* 75 U.S.App.D.C. 251, 252, 126 F.2d 642, 643 (1942); *Northern Natural Gas Co. v. O'Malley,* 277 F.2d 128, 137 (8th Cir.1960); *Miller v. Burger,* 161 F.2d 992, 994 (9th Cir.1947).

**78.** In resolving questions of law, courts should give some deference to the administrative decision where the agency has a lengthly record of practical experience with the subject matter, *Levinson v. Spector Motor Serv.,* 330 U.S. 649, 672, 67 S.Ct. 931, 943, 91 L.Ed. 1158, 1173 (1947), or technical knowledge of relevant industry conditions and practices, *Alexander v. FERC,* 197 U.S. App.D.C. 288, 292–293, 609 F.2d 543, 547–548 (1979); *Columbia Gas Transmission Corp. v. FPC,* 174 U.S.App.D.C. 204, 207, 530 F.2d 1056, 1059 (1976). But absent factors of this nature, administrative rulings on legal questions are not entitled to any particular degree of homage. *H.W. Wilson Co. v. United States Postal Serv.,* 580 F.2d 33, 37 (2d Cir.1978); *Institute for Scientific Information v. United States Postal Serv.,* 555 F.2d 128, 132 (3d Cir.1977). See also *Retail Store Union v. NLRB,* `supra* note 76, 151 U.S. App.D.C. at 219, 456 F.2d at 390.

typically those of statutory construction, courts yield agencies varying degrees of deference, it is the court, not the agency, that has the final say.[79] And while the law-fact distinction has blurred considerably of late,[80] that much of the judicial role remains substantial and vital,[81] and clearly so where, as here, it is statutorily mandated.

The District Court's function extended, then, to resolution of legal problems incidental to determining the applicability of claimed exemptions to the information in suit.[82] The issue thus is reduced to whether, in passing on exemption questions, the court similarly was free to redetermine the *facts* upon which its rulings were to be predicated.[83] I must emphasize that the inquiry at this point concerns the District Court's methodology for ascertaining whether information in dispute was exempt from FOIA's mandatory release requirement, not whether the agency, in an exercise of its discretion, could have released it despite its exempt status. With respect to this particular phase of the litigation, and in view of the caliber of factfinding procedures afforded at the agency level, I conclude that the court was authorized to amplify the administrative record through the admission of new evidence, and to make its own findings of fact.

## B. *The Statutory Rule*

The District Court explained why it chose de novo review as the procedural route to ascertainment of the extent to which the documentary matter in controversy might have been intercepted by one or more of FOIA's exemptions:

**79.** Courts "will accord great weight to a departmental construction of its own enabling legislation, especially a contemporaneous construction," but that "is only one input in the interpretational equation." *Zuber v. Allen*, 396 U.S. 168, 192, 90 S.Ct. 314, 327, 24 L.Ed.2d 345, 360 (1969). Moreover, an agency's interpretation of a statute of general applicability—like FOIA—hardly commands the same weight as its interpretation of its own substantive mandate. See *United States v. Florida E. Coast Ry.*, 410 U.S. 224, 236 n. 6, 93 S.Ct. 810, 816 n. 6, 35 L.Ed.2d 223, 234 n. 6 (1973); *International Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 441, 95 S.Ct. 600, 609, 42 L.Ed.2d 558, 569 (1975). Courts, not agencies, have final responsibility for matters of statutory construction, even of the agency's own enabling legislation. *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23, 30 (1981) ("[t]he interpretation put on the statute by the agency charged with administering it is entitled to deference, but the courts are the final authorities on issues of statutory construction") (citations omitted); *SEC v. Sloan*, 436 U.S. 103, 118, 98 S.Ct. 1702, 1712, 56 L.Ed.2d 148, 161 (1978) ("[n]or does the existence of a prior administrative practice, even a well-explained one, relieve [the court] of [its] responsibility to determine whether that practice is consistent with the agency's statutory authority"); *Zuber v. Allen, supra*, 396 U.S. at 193, 90 S.Ct. at 328, 24 L.Ed.2d at 360 ("[t]he [c]ourt may not ... abdicate its ultimate responsibility to construe the language employed by Congress"); *Volkswagenwerk Aktiengesellschaft v. FMC*, 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090, 1098 (1968) ("the courts are the final authorities on issues of statutory construction"); *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 385, 85 S.Ct. 1035, 1043, 13 L.Ed.2d 904, 914 (1965) ("while informed judicial determination is dependent upon enlightenment gained from administrative experience, in the last analysis [statutory words] must get their final meaning from judicial construction").

**80.** See 4 K. Davis, Administrative Law Treatise §§ 30.01–30.04 (1958 & Supp.1970, 1982); *id.* § 30.00 (Supp.1970, 1982); K. Davis, Administrative Law of the Seventies §§ 30.00, 30.02 (1976).

**81.** See 4 K. Davis, Administrative Law Treatise §§ 30.01–30.04 (1958 & Supp.1970, 1982); *id.* § 30.00, 30.02 (1976).

**82.** While, to simplify the demonstration, I will discuss de novo review in the context of Exemption 4, the same analysis obtains in the instance of any other FOIA exemption dependent in any way on particular facts.

**83.** This question was not before the Supreme Court in *Chrysler Corp. v. Brown, supra* note 55. The Court pointed out that the Third Circuit, in the decision under review, had "assumed for purposes of argument that the material in question was within an exemption to the FOIA, [and thus had] found it unnecessary expressly to decide that issue...." 441 U.S. at 319 n. 49, 99 S.Ct. at 1726 n. 49, 60 L.Ed.2d at 235 n. 49. Consequently, the controversy concerned, not exemption from mandatory disclosure, but rather the propriety of discretionary release, a matter I address in Part III *infra*. Accordingly, the Court's discussion of de novo judicial review, *id.* at 318–319, 99 S.Ct. at 1726, 60 L.Ed.2d at 235, must be taken in that context.

In a reverse-FOIA case the threshold question is whether the documents sought are subject to mandatory disclosure or fall within an exemption to the Act. If the documents sought are subject to mandatory disclosure, the lawsuit is at an end. If the documents, or portions thereof, fall within an exemption to mandatory disclosure, the Act does not apply and the agency's decision to disclose the documents is subject to reversal only for an abuse of discretion. In determining whether any exemptions apply to the information which the agency intends to disclose, the Court is not confined to reviewing the agency record. Even under APA review, the Court must hold a hearing and determine *de novo* whether an exemption applies just as if the suit were one brought to compel disclosure.[84]

That, undeniably, was the procedure we outlined some years ago in *Charles River Park "A," Inc. v. HUD.*[85] There we theorized that judicial exploration into whether submitted information was exempt did not amount to review of agency action, but was merely inquiry as to whether the submitter had any cause of action for restraint of a contemplated public release.[86] Subsequently, however, in *Chrysler Corp. v. Brown,*[87] the Supreme Court made clear that the

submitter's sole entree into court is an action for review of the agency's disclosure decision under the APA.[88] NOW and the Government emphasize this point, arguing that in consequence the review is to be conducted solely on the administrative record, and that the agency's outcome on applicability of exemptions is to be tested exclusively by an abuse-of-discretion standard. We recently acknowledged[89] that *Chrysler* poses the question of continued viability of our holding in *Charles River Park "A"* on de novo review of exemption rulings.[90] Squarely addressing that question, and accepting the APA's pilotage on procedure, I believe de novo reconsideration of the exemption claims was entirely proper here.

I start from the premise that attempts to enjoin agency disclosure of information constitute review of agency action, and then turn to the APA's Section 10, the wellspring of the information-submitter's right to sue. It directs a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions" falling within any of six different categories,[91] including any administrative rulings found to be "unwarranted by the facts to the extent that the facts are subject to trial de novo

---

**84.** *Metropolitan Life Ins. Co. v. Usury, supra* note 2, 426 F.Supp. at 156–157 (citations omitted).

**85.** 171 U.S.App.D.C. at 291 & n. 4, 519 F.2d at 940 & n. 4.

**86.** We elucidated:

A plaintiff in a suit such as this is obviously entitled to no relief if the government could be forced to disclose the information it wishes to reveal in a suit under the FOIA. Thus, the district court should hold a hearing to determine whether the information involved ... would have been exempt just as it would if a suit had been brought under the FOIA to compel disclosure. In holding this hearing the district court is not reviewing agency action; it is making a threshold determination whether the plaintiff has any cause of action at all.

*Id.* at 291 n. 4, 519 F.2d at 940 n. 4 (citations omitted).

**87.** *Supra* note 55.

**88.** *Chrysler Corp. v. Brown, supra* note 55, 441 U.S. at 317–318, 99 S.Ct. at 1725–1726, 60

L.Ed.2d at 234–235. The Court rejected two alternative bases: FOIA itself, *id.* at 291–294, 99 S.Ct. at 1712–1714, 60 L.Ed.2d at 218–220, and the Trade Secrets Act, *id.* at 316–317, 99 S.Ct. at 1725, 60 L.Ed.2d at 234.

**89.** *Worthington Compressors, Inc. v. Gorsuch,* 215 U.S.App.D.C. 339, 340–341, 668 F.2d 1371, 1372–1373 (1981) (denying petition for rehearing).

**90.** It long has been our rule that a recent decision of one panel cannot be overruled by another panel, but only by the court *en banc. E.g., Insurance Agents' Int'l Union v. NLRB,* 104 U.S.App.D.C. 218, 260 F.2d 736 (1958), *aff'd,* 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960); *Davis v. Peerless Ins. Co.,* 103 U.S.App.D.C. 125, 127, 255 F.2d 534, 536 (1958). This principle is, of course, subservient to the requirement that we observe controlling precedent established by the Supreme Court.

**91.** 5 U.S.C. § 706(2) (1982).

by the reviewing court." [92] This provision, as construed by the Supreme Court, is narrow in scope, and authorizes de novo factfinding in only two instances.[93] One of these is "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate," [94] and that, in my view, is the situation here.

Indubitably, the proceedings culminating in the administrative decisions to release company-submitted data were adjudicatory in character.[95] Confronting the agency were the questions whether any of the material was immunized from mandatory divulgence by one or more FOIA exemptions and, to the extent that it was, whether the agency could and should nonetheless disclose it. The first of these questions, and the only one certainly decided at the administrative level,[96] called for an assessment of the harm, if any, that disclosure likely would visit upon the submitter's competitive position in the insurance industry.[97] The facts vital to that inquiry were "the facts of the particular case" [98]—those "pertaining to the parties and their businesses

**92.** *Id.* § 706(2)(F).

**93.** *Camp v. Pitts,* 411 U.S. 138, 141–142, 93 S.Ct. 1241, 1243–1244, 36 L.Ed.2d 106, 110–111 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971).

**94.** *Citizens to Preserve Overton Park, Inc. v. Volpe, supra* note 93, 401 U.S. at 415, 91 S.Ct. at 823, 28 L.Ed.2d at 153. See also *Camp v. Pitts, supra* note 93, 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111.

**95.** The distinction between adjudicative and legislative facts is now well recognized:
> Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but the general facts which help the tribunal decide questions of law and policy and discretion.
> \* \* \* \* \* \*
> Facts pertaining to the parties and their businesses and activities, that is, adjudicative facts, are intrinsically the kind of facts that ordinarily ought not to be determined without giving the parties a chance to know and to meet any evidence that may be unfavorable to them, that is, without providing the parties an opportunity for trial. The reason is that the parties know more about the facts concerning themselves and their activities than anyone else is likely to know, and the parties are therefore in an especially good position to rebut or explain evidence that bears upon adjudicative facts. Because the parties may often have little or nothing to contribute to the development of legislative facts, the method of trial often is not required for the determination of disputed issues about legislative facts.

2 K. Davis, Administrative Law Treatise § 12:3 at 413 (2d ed. 1979). This concept is at the heart of Fed.R.Evid. 201, respecting which the Advisory Committee spoke of "fundamental differences between adjudicative facts and legislative facts," and explained that "[a]djudicative facts are simply the facts of the particular case" while "[l]egislative facts ... are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body." Advisory Committee Note to Fed.R.Evid. 201(a).

**96.** It does not clearly appear that OFCCP ever reached the question whether it would, in the exercise of its discretion, voluntarily release information determined to be exempt from mandatory disclosure under FOIA. Compare, *e.g.,* J.App. 324 (noting without elaboration that FOIA exemptions are permissive not mandatory) with, *e.g.,* J.App. 326 (stating that Exemption 4 test was not met by companies).

**97.** "[C]ommercial or financial matter is 'confidential' for purposes of [Exemption 4 of FOIA] if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks & Conservation Ass'n v. Morton,* 162 U.S.App.D.C. 223, 228, 498 F.2d 765, 770 (1974) (footnote omitted). Accord, *National Parks & Conservation Ass'n v. Kleppe,* 178 U.S.App.D.C. 376, 380–381, 547 F.2d 673, 677–678 (1976). Because submission of equal employment and affirmative action material is generally compulsory for those who would contract with the Federal Government, see notes 13–17 *supra* and accompanying text, the first prong of the *National Parks* test, which focuses on the Government's ability to obtain information, is not at issue here. *Worthington Compressors, Inc. v. Costle, supra* note 55, 213 U.S.App.D.C. at 206, 662 F.2d at 51; *National Parks & Conservation Ass'n v. Kleppe, supra,* 162 U.S.App.D.C. at 228, 498 F.2d at 770.

**98.** Advisory Committee Note to Fed.R.Evid. 201(a), quoted in part *supra* note 95.

and activities''[99]—and the process by which they were to be ascertained from the evidence was distinctly adjudicative.[100] The critical question, then, is whether the agency's factfinding mechanism was equal to the task.

## C. *The Adequacy of Agency Factfinding Procedures*

As noted earlier, regulations of the Department of Labor inform the administrative handling of requests for either confidentiality or disclosure of data obtained from government contractors.[101] These materials, the regulations warn, are subject to FOIA's public inspection and copying mandates.[102] Contractors are permitted, however, to identify information in their affirmative action programs and included workforce analyses which they deem exempt from compulsory release under FOIA, and to specify reasons for nondisclosure.[103] An agency officer must pass on a contractor's claim within ten days and, should the contractor appeal from an adverse ruling, the agency's director must make the final determination within another ten-day period.[104] That was the methodology employed in the cases now before us[105] and, so far as we are advised, is the sum total of the procedure the agency affords for resolution of even the most complex of the variegated factual issues that FOIA exemptions can and frequently do present.

The caselaw offers little guidance for determinations on whether agency factfinding procedures are adequate within the meaning of Section 10 of the APA, as interpreted by the Supreme Court.[106] I perceive

**99.** 2 K. Davis, Administrative Law Treatise § 12:3 at 413 (2d ed. 1979), quoted *supra* note 95.

**100.** See 2 K. Davis, Administrative Law §§ 12:3, 12:4 (2d ed. 1979). See also notes 24–34 *supra* and accompanying text.

**101.** See text *supra* at notes 18–23.

**102.** 41 C.F.R. §§ 60–40.2 to 60–40.4, 60–60.4(d), (e) (1983).

**103.** *Id.* § 60–60.4(d).

**104.** *Id.*

**105.** See text *supra* at notes 27–34.

**106.** See text *supra* at notes 91–94. Sometimes, in lieu of purely statutory treatment, the Due Process Clause of the Fifth Amendment is invoked. *E.g., Ralpho v. Bell,* 186 U.S.App.D.C. 368, 389–390, 569 F.2d 607, 628–629 (1977); *American & European Agencies v. Gillilland,* 101 U.S.App.D.C. 104, 106, 247 F.2d 95, 97, *cert. denied,* 355 U.S. 884, 78 S.Ct. 152, 2 L.Ed.2d 114 (1957); *Carson Prods. Co. v. Califano,* 594 F.2d 453, 459 (5th Cir.1979); *Del Laboratories, Inc. v. United States,* 86 F.R.D. 676, 680–683 (D.D.C. 1980); *Zotos Int'l, Inc. v. Kennedy,* 460 F.Supp. 268, 274–276 (D.D.C.1978). Since, however, I conclude that OFCCP's factfinding procedures were in one respect deficient in terms of the APA, I do not reach the question whether they satisfy the demands of due process. See, *e.g., Wolston v. Reader's Digest Ass'n,* 443 U.S. 157, 160–161 n. 2, 99 S.Ct. 2701, 2704 n. 2, 61 L.Ed.2d 450, 456 n. 2 (1979) (dispositive issues of statu- tory law are to be treated before constitutional issues); *Bowen v. United States,* 422 U.S. 916, 920, 95 S.Ct. 2569, 2573, 45 L.Ed.2d 641, 647 (1975) (federal courts will not decide constitutional questions unnecessarily). This is not to say, however, that due process determinations are inapposite here. There obviously is at least some degree of commonality between statutorily-required adequacy of agency factfinding procedures and the imperatives of due process. See *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 288 n. 4, 95 S.Ct. 438, 443 n. 4, 42 L.Ed.2d 447, 457 n. 4 (1974). See also *Porter v. Califano,* 592 F.2d 770, 782–784 (5th Cir.1979) (citing due process cases in holding suspended federal employee entitled to de novo judicial review because of biased agency tribunal and lack of opportunity for discovery). I realize, too, that unless government contractors are safeguarded statutorily against unfair or erroneous agency release of valuable business information, a problem of constitutional dimensions must be faced, and that I must construe the APA in that light. *United States v. Clark,* 445 U.S. 23, 27, 100 S.Ct. 895, 899–900, 63 L.Ed.2d 171, 177 (1980) (court will not pass on constitutionality of federal statute if a particular construction possibly can avoid the constitutional question); *Califano v. Yamasaki,* 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176, 187 (1979) (same); *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 582 & n. 22, 99 S.Ct. 1355, 1364 & n. 22, 59 L.Ed.2d 587, 600–601 & n. 22 (1979) (policy of "strict necessity" in disposing of constitutional issues); *International Ass'n of Machinists v. Street,* 367 U.S. 740, 749–750, 81 S.Ct. 1784, 1790, 6 L.Ed.2d 1141, 1150 (1961) (same). So, while my view on the question at hand rests on statutory grounds, it is usefully

no occasion, however, for any general exploration or dissertation on that subject. For whatever "adequacy" at its broadest may require, it is clear enough to me that in one critical respect it was lacking here, and accordingly that the District Court was empowered by the APA to engage de novo in such factfinding as a preliminary assessment of the companies' exemption claims necessitated.[107]

I start with the "fundamental proposition of administrative law that interested parties must have an effective chance to respond to crucial facts."[108] This precept finds expression in the familiar requirement of notice of contemplated agency action and opportunity to be heard,[109] and its reach extends to a demand for suitable means of addressing not only the opponent's case but the agency's concerns as well.[110] As the Supreme Court has declared, "where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."[111] Beyond that, "[a] party is entitled ... to know the issues on which decision will turn and to be apprised of the factual material on which the agency relies for decision so that he may rebut it."[112] And "[t]hose who are brought into contest with the Government in a quasi-judicial proceeding aimed at the control of their activities are entitled to be fairly advised of what the Government proposes and to be heard upon its proposals before it issues its final command."[113] The opportunity for response must come, of course, " 'at a meaningful time and in a meaningful manner.' "[114]

---

informed by constitutional decisions in closely similar situations.

**107.** See text *supra* at notes 91–94.

**108.** *Carson Prods. Co. v. Califano, supra* note 106, 594 F.2d at 459.

**109.** See, *e.g., Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30, 42 (1978), quoting *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) (notice of termination of utility service inadequate because not " 'reasonably calculated' " to inform customers of opportunity to present objections); *North Alabama Express, Inc. v. United States,* 585 F.2d 783, 786–787 (5th Cir.1978) (failure to provide adequate notice creates jurisdictional defect which invalidates administrative action until cured); *Brandt v. Hickel,* 427 F.2d 53, 56 (9th Cir.1970) (due process requires party adversely affected by agency decision to be afforded proper notice of action to be taken). And see *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 170–172, 71 S.Ct. 624, 647–649, 95 L.Ed. 817, 853–854 (1951) (Frankfurter, J., concurring):

[F]airness can rarely be obtained by secret, one-sided determination of facts decisive of rights .... Secrecy is not congenial to truth-seeking and self-righteousness gives too slender an assurance of rightness. No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.

**110.** See cases cited *infra* notes 118–119.

**111.** *Greene v. McElroy,* 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377, 1390–1391 (1959). See also *Gonzales v. United States,* 348 U.S. 407, 413–414, 75 S.Ct. 409, 412–413, 99 L.Ed. 467, 472 (1955) (petitioner entitled to know thrust of agency's recommendations so he can muster facts and arguments to meet them); *Simmons v. United States,* 348 U.S. 397, 405, 75 S.Ct. 397, 401–402, 99 L.Ed. 453, 459 (1955) (notice of adverse charges essential to basic fairness); *Moore-McCormack Lines v. United States,* 413 F.2d 568, 584–585, 188 Ct.Cl. 644 (1969) (procedural fairness requires that individuals be informed of agency position and have opportunity to respond).

**112.** *Bowman Transp. v. Arkansas-Best Freight Sys., supra* note 106, 419 U.S. at 288 n. 4, 95 S.Ct. at 443 n. 4, 42 L.Ed. at 457 n. 4.

**113.** *Morgan v. United States,* 304 U.S. 1, 18–19, 58 S.Ct. 773, 776, 82 L.Ed. 1129, 1132–1133 (1938). See also *Del Laboratories, Inc. v. United States, supra* note 106, 86 F.R.D. at 680–682; *Zotos Int'l, Inc. v. Kennedy, supra* note 106, 460 F.Supp. at 274–279. Compare *Carson Prods. Co. v. Califano, supra* note 106, 594 F.2d at 457–459.

**114.** *Carson Prods. Co. v. Califano, supra* note 106, 594 F.2d at 459, quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965). See also *Fuentes v. Shevin,* 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556, 570 (1972) (notice and hearing must be afforded while deprivation still avoidable); *Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90, 96 (1971) (hearing which excludes consideration of essential ele-

These principles, so essential to fairness of the proceeding and accuracy of the fact-finding process, have already achieved recognition by this court. As far back as 1974, we announced that "[a]n agency may not validly take action against an individual without a hearing unless its notice to the individual of the adverse action proposed to be taken against him specifies the nature of the facts and evidence on which the agency proposes to take action." [115] The reason, we said, is that "[s]uch notice enables the affected party to prepare an informed response which places all the relevant data before the agency." [116] Much more recently, we affirmed, without comment,[117] a District Court ruling articulating the proposition that "[w]here no 'hearing' of any type is required by statute, procedural fairness demands that plaintiffs be informed of the [agency's] position on [an] issue and have an opportunity to respond to [the agency's] contentions before the

issuance of a final determination on the issue." [118] Other decisions of the court are of similar effect.[119]

In the litigation at bar, the principal question before OFCCP was the applicability of FOIA's Exemption 4, which ushered in centrally a test distinctly factual in nature: whether disclosure of the sought-after data likely would beget substantial harm to the companies' competitive positions.[120] The agency's regulations confined the companies, in their efforts to establish just such a threat, to written specifications of reasons for confidential treatment.[121] The companies put forward lengthy and detailed written statements in support of their position,[122] only to learn in the end that overwhelmingly their efforts were unsuccessful.[123] Neither the agency's regulations nor its procedures offered the companies any guidance in focusing their presentations or documentation [124] and, for much

ment not "meaningful"); *Boddie v. Connecticut,* 401 U.S. 371, 378–379, 91 S.Ct. 780, 786–787, 28 L.Ed.2d 113, 119–120 (1971).

**115.** *Hess & Clark, Div. of Rhodia, Inc. v. FDA,* 161 U.S.App.D.C. 395, 403, 495 F.2d 975, 983 (1974).

**116.** *Id.*

**117.** *Aeron Marine Shipping Co. v. United States,* 224 U.S.App.D.C. 373, 379, 695 F.2d 567, 573 (1982).

**118.** *Aeron Marine Shipping Co. v. United States,* 525 F.Supp. 527, 534 (1981), quoting *Moore-McCormack Lines, Inc. v. United States, supra* note 111, 413 F.2d at 584, *aff'd in part and rev'd in part, Aeron Marine Shipping Co. v. United States, supra* note 117 (citation omitted).

**119.** *American Cyanamid Co. v. FDA,* 196 U.S. App.D.C. 400, 406–407, 606 F.2d 1307, 1313–1314 (1979) (unsuccessful applicant for product approval must be given notice of safety standards and ways it failed to meet them); *USV Pharmaceutical Corp. v. Secretary of HEW,* 151 U.S.App.D.C. 284, 290, 466 F.2d 455, 461 (1972) (agency must, before calling upon litigant for additional evidence, establish right to a hearing, state facts and reasons showing at least prima facie that evidence before agency raised no material factual issue justifying hearing). See *Zotos Int'l, Inc. v. Kennedy, supra* note 106, 460 F.Supp. at 276, holding, in the due process context, that a litigant must have "the means of

engaging in a reasonably focused dialogue with the agency concerning the major issues in contention." See also *Ralpho v. Bell, supra* note 106, 186 U.S.App.D.C. at 389–390, 569 F.2d at 628–629; *American & European Agencies v. Gilliland, supra* note 106, 101 U.S.App.D.C. at 106, 247 F.2d at 97.

**120.** See note 97 *supra* and accompanying text.

**121.** 41 C.F.R. § 60–60.4(d) (1983). See also text *supra* at notes 101–105.

**122.** Before ICS, Metropolitan and Prudential submitted memoranda totaling more than 100 pages. Brief for NOW at 8 & n. 11. On appeal to OFCCP, Metropolitan filed a 17-page letter, with over 400 pages of supporting documents. See J.App. 280; Brief for NOW at 10 & n. 14. Hancock similarly filed a lengthy letter of appeal buttressed by an expert's affidavit. See J.App. 334 (OFCCP reference to affidavit submitted by Hancock).

**123.** See text *supra* at notes 29–34.

**124.** We recently held that submitters of information to the Environmental Protection Agency (EPA) are sufficiently safeguarded from unfair and faulty factfinding by EPA's normal method of processing confidentiality claims. *Worthington Compressors, Inc. v. Costle, supra* note 55, 213 U.S.App.D.C. at 209 n. 48, 662 F.2d at 54 n. 48. EPA's regulations, unlike those of OFCCP, articulate a carefully-crafted plan for resolving such disputes as may arise, and supply the agen-

of the material implicated, the companies became aware of the agency's objections to their claims only after the agency's final decision to disclose.[125] Indeed, in two of the three cases at bar, the second-level administrative decisionmaker not only denied the companies' confidentiality requests but also, in several instances, decreed the release of data which the first-level decisionmaker had ordered withheld.[126] And while, of course, the findings and reasons advanced in support of the first-level administrative decision are open to attack on administrative appeal, OFCCP regulations provide no mechanism for combatting the findings and reasons assigned in an adverse second-level decision—the all-important "final determination" of the agency.[127] Put another way, the companies had no opportunity whatsoever to learn the final decisionmaker's concerns, much less to address them.

I would hold, then, that the factfinding procedures in vogue when OFCCP undertook to resolve the companies' FOIA-exemption claims were too meager to survive the test of adequacy. It follows that the District Court, in assessing those claims provisionally on the companies' preliminary injunctive motion, did not err when it engaged in de novo factfinding. With the agency's own factfinding methodology inadequate, that course was fully authorized by the APA;[128] more importantly, it ensured fulfillment of the statutory pledge of adequate factfinding[129] in the only way

possible without change in the agency's procedures responsive to the principles I have explicated.

It does not follow, however, that the same course is indicated ineluctably when the District Court reaches these cases on the merits. An adequate factfinding process must, of course, be afforded at some point, but, with the agency's factfinding machinery sufficiently improved, that could be done at the administrative level; and in that event de novo judicial review of the agency's exemption-related factual determinations would lose the legal foundation it now has.[130] Judicial review would then be confined to the administrative record,[131] and the agency's exemption rulings would be vulnerable only if arbitrary, capricious, abusive of discretion or otherwise contrary to law.[132]

So, whether the factfinding essential on exemption claims properly is to take place before the agency or the court depends upon the caliber of the procedures the agency is prepared to extend. And just what an agency will offer in this regard is basically a matter of policy—kgenerically legislative, but usually administrative—which is neither a court's function nor prerogative to prescribe.[133] Congress has, of course, established a policy for cases generally by providing for de novo judicial review in those instances where agency adjudicative factfinding procedures are en-

---

cy with substantive guidelines as well as intricately detailed procedures. See 40 C.F.R. §§ 2.100–2.309 (1983). The EPA scheme provides submitters of allegedly confidential material with two basic procedural entitlements completely lacking in the OFCCP offering. One is a notice of proposed agency deliberation on the matter of confidentiality, which identifies specific, prescribed points to be addressed in comments, see *id.* § 2.204(e)(4); the other is opportunity to respond to agency concerns before a final decision is made, see *id.* § 2.205(b). Our sanction of EPA's system, therefore, does not call for automatic approval of the skeletal framework comprising OFCCP's counterpart. Compare *id.* §§ 2.203–2.215 with 41 C.F.R. § 60–60.4 (1983).

**125.** See text *supra* at note 34.

**126.** See J.App. 326 (Metropolitan), 336 (Hancock).

**127.** See 41 C.F.R. § 60–60.4(d) (1983); text *supra* at notes 102–104.

**128.** See text *supra* at notes 91–94.

**129.** See text *supra* at notes 106–119.

**130.** See text *supra* at notes 74–81, 115–119.

**131.** See text *supra* at note 71.

**132.** See 5 U.S.C. § 706(2)(A) (1982).

**133.** *Cf. Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council,* 435 U.S. 519, 543–545, 98 S.Ct. 1197, 1211–1212, 55 L.Ed.2d 460, 479–480 (1978).

tirely lacking or seriously infirm.[134] But an agency can totally eliminate the alternative of de novo review by providing adequate factfinding mechanisms, or elevating those it may have to a legally acceptable level.

It may well be more desirable, from the perspective of both the administrative process and the judicial system, for the agency, rather than the court, to function as the primary factfinder in reverse-FOIA cases. Not the least of the considerations relevant is that Congress has not specifically designated the forum for such factfinding,[135] and there is reason to doubt that, were it ever to do so, its designee would be the court.[136] At any rate, the choice presently is one for the agency to make—it is a by-product of the agency's power to set policy on the methodology of its factfinding—and one I am loathe to foreclose. I think an opportunity for an upgrading of OFCCP's factfinding procedures should be afforded before the District Court continues on with de novo exemption-factfinding in its consideration of the merits.

## III. RULINGS BY THE DISTRICT COURT

All parties claim error of some kind in the District Court's holdings on the effect of FOIA's exemptions on the parties' respective requests for confidentiality or disclosure of particular items of information. NOW and the Government also contest the court's conclusion that voluntary agency release of FOIA-exempted materials would pervert agency discretion.[137] I now address these contentions, mindful that the single subject of the appeals before us is an order disposing of a motion for a preliminary injunction, and advertent to the legal principles thus brought into play. In ruling on a motion for relief of that character, a court does not reach final determinations on the merits, but "exercise[s] its discretion 'upon the basis of a series of estimates:' "[138] whether the movant likely will prevail on the merits, whether he will suffer irreparable harm without interim relief, whether others will be injured by an award of such relief, and whether the public interest will be advanced or disserved by grant or denial of the motion.[139] Thus, absent improper procedure or an erroneous application of the law, the decision respecting a preliminary injunction lies within the sound discretion of the trial court, and will be reversed on appeal only for abuse of that discretion.[140]

Applying this obviously narrow standard of review, I perceive no basis for upsetting the various assessments, as matters of probability, underlying the District Court's rulings that particular informational items

---

**134.** See text *supra* at notes 91–94.

**135.** FOIA, from its very beginning, has expressly required claims of those requesting disclosure to be heard de novo in district courts. Pub.L. No. 90–23, 81 Stat. 54, 55 (1967), codified at 5 U.S.C. § 552(a)(4)(B) (1982). But Congress has not legislated specifically on the methodology appropriate when the moving litigant is an information-submitter seeking a ban on disclosure.

**136.** See Freedom of Information Act Requests for Business Data and Reverse-FOIA Lawsuits, H.R.Rep. No. 1382, 95th Cong., 2d Sess. 59–63 (1978) (discussing scope of judicial review in reverse-FOIA cases).

**137.** See text *supra* at notes 55–56.

**138.** *Industrial Bank v. Tobriner, supra* note 62, 132 U.S.App.D.C. at 54, 405 F.2d at 1324, quoting *Perry v. Perry,* 88 U.S.App.D.C. 337, 338, 190 F.2d 601, 602 (1951), in turn quoting *Commu-*

*nist Party v. McGrath,* 96 F.Supp. 47, 48 (D.D.C. 1951).

**139.** *In re Permanent Surface Mining Regulation Litig.,* 199 U.S.App.D.C. 225, 226, 617 F.2d 807, 808 (1980); *Jacksonville Port Auth. v. Adams,* 181 U.S.App.D.C. 175, 180, 556 F.2d 52, 57 (1977); *Quaker Action Group v. Hickel,* 137 U.S. App.D.C. 176, 181, 421 F.2d 1111, 1116 (1969); *Industrial Bank v. Tobriner, supra* note 62, 132 U.S.App.D.C. at 54, 405 F.2d at 1324.

**140.** *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189, 195 (1940), citing *Prendergast v. New York Tel. Co.,* 262 U.S. 43, 50–51, 43 S.Ct. 466, 469, 67 L.Ed. 853, 858 (1923); *In re Permanent Surface Mining Regulation Litig., supra* note 139, 199 U.S.App.D.C. at 226, 617 F.2d at 809; *Delaware & Hudson Ry. v. United Transp. Union,* 146 U.S.App.D.C. 142, 158, 450 F.2d 603, 619, *cert. denied,* 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689 (1971).

probably would ultimately be found exempt from mandatory disclosure while others would not be. Much less is there ground for disturbing the weights the court assigned to the presence or absence of harm from the grant or denial of injunctive relief.[141] Indeed, I view only one challenge as worthy of discussion: that the court erred in holding that voluntary agency release of information the court thought likely to be FOIA-exempt would constitute an abuse of discretion. Because that thesis questions the procedure the court followed in settling on that aspect of the injunction, it merits attention at this stage of the litigation.

After concluding that the companies had demonstrated a substantial probability of prevailing on the merits of some of their exemption claim, the District Court correctly observed that, so far as FOIA is concerned, exempt data might nevertheless be divulged in the sound exercise of agency discretion.[142] The court then proceeded, however, to consider whether in any instance OFCCP had abused that discretion by deciding to unveil such material, and concluded that it had.[143] NOW and the Government assail this approach as a usurpation of the agency's prerogative to make determinations on voluntary release in the first instance.

The District Court based its abuse-of-discretion rulings on two grounds. First, it held that voluntary disclosure of much of the information which the court deemed probably exempt from mandatory disclosure under FOIA would constitute a criminal offense under the Trade Secrets Act.[144] Second, though perceiving that OFCCP "never reached the question of discretionary disclosure of the data," [145] the court felt that "failure to exercise any discretion, and the resulting failure to engage in any meaningful consideration of this question, constitutes an abuse of that discretion." [146]

The District Court was right in its conclusion that any voluntary agency disclosure of information exempted by FOIA but intercepted by the Trade Secrets Act would constitute a serious abuse of agency discretion.[147] I cannot say that the court exceeded the bounds of its own discretion in estimating that some FOIA-exempt material which OFCCP proposed to release fell within the purview of the Trade Secrets Act.[148] There were, however, exempt items beyond the reach of that legislation,[149] and I cannot approve the decisional course the court took with respect to them.

As the District Court divined, OFCCP apparently found all data it planned to divulge to be subject to compulsory release under FOIA. Consequently, it seems that OFCCP never reached the question whether material neither exempted by FOIA nor protected by the Trade Secrets Act should

---

141. Nor do I perceive any prejudicial error in related procedural rulings. During the hearing in the District Court, NOW insisted upon release of the data at issue in their entirety. On this ground, the court refused to permit counsel for NOW to cross-examine witnesses in an effort to show that withholding of only portions of the disputed material would eliminate the alleged injury to the insurance companies and their employees, and NOW attacks this restriction. See Brief for NOW at 42–44. Since counsel for the Government—NOW's ally in the litigation—was permitted to pursue this line of questioning, and did in fact do so, I discern no harm flowing from the court's ruling. Nor do I find error in NOW's other challenges. See Brief for NOW at 45–49.

142. *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 170–72.

143. *Id.* at 170–171.

144. *Id.* at 170.

145. *Id.* at 171.

146. *Id.*

147. See *Chrysler Corp. v. Brown, supra* note 55, 441 U.S. at 318, 91 S.Ct. at 1726, 60 L.Ed.2d at 235; *Charles River Park "A", Inc. v. HUD, supra* note 55, 171 U.S.App.D.C. at 293, 519 F.2d at 942.

148. See *Metropolitan Life Ins. Co. v. Usery, supra* note 2, 426 F.Supp. at 170.

149. See *id.* at 170–171. I speak, of course, of information shielded from mandatory disclosure by Exemption 6, not that so immunized by Exemption 4 and removed by the Trade Secrets Act from the area of discretionary release.

be unveiled in the public interest. An agency need never ponder the propriety of voluntarily disclosing information it believes to be mandatorily disclosable under FOIA;[150] only if it is first determined that the information is FOIA-exempt is there any occasion to consider whether release nonetheless is appropriate as a matter of agency policy or discretion.

Furthermore, not until the agency passes on voluntary disclosure, or improperly refuses to do so, should the court act.[151] Questions of voluntary administrative action, by definition, are for the agency, not the court, at least in the first instance; the role of the court is merely to ensure that the agency action was not arbitrary or otherwise contrary to law.[152] Moreover, that determination, we have said, ordinarily is to be made solely on the administrative record,[153] and here there was none on voluntary release. The District Court shoudl not have undertaken any adjudication on that subject before the agency entrusted with policymaking and decisionmaking powers in the area had occasion to do so.

## IV. CONCLUSION

For the reasons stated, I would remand the appealed phases of these cases to the District Court with instructions to remand in turn to OFCCP the question of release of information exempt under FOIA but unaffected by the Trade Secrets Act. I would further instruct the court to afford OFCCP an opportunity to revise its fact-finding

procedures in such manner as it may desire. I would affirm the District Court's rulings in all other respects, and let the preliminary injunction remain in force subject to the court's further order. This disposition of these appeals, of course, would leave the parties at liberty to litigate the merits fully, free of any preclusion or limitation by the determinations leading to that injunction.[154]

MIKVA, Circuit Judge, and McGOWAN, Senior Circuit Judge, concurring:

 We concur in the result in this case, namely, affirmance of the preliminary injunction and remand to the District Court with instructions for further proceedings. We do not agree, however, with Chief Judge Robinson's reasons for affirming the preliminary injunction, and we see differently what should transpire upon remand to the District Court. In our view, de novo review in the District Court was inappropriate upon motion for preliminary injunction; such review also would be inappropriate at the trial on the merits; and no new or different procedures should be required of the agency. We uphold the preliminary injunction on other grounds, however, and our instructions to the District Court differ somewhat from those of the Chief Judge.

FOIA provides for de novo review by the district court of the question of statutory exemption from disclosure, but the FOIA right of action extends only to those who

---

**150.** See *Chrysler Corp. v. Brown, supra* note 55, 441 U.S. at 291–294, 99 S.Ct. at 1712–1714, 60 L.Ed.2d at 218–220; *Charles River Park "A", Inc. v. HUD, supra* note 55, 171 U.S.App.D.C. at 292–293, 519 F.2d at 940–941.

**151.** *Charles River Park "A", Inc. v. HUD, supra* note 55, 171 U.S.App.D.C. at 294, 519 F.2d at 943; *General Motors Corp. v. Marshall, supra* note 72, 654 F.2d at 299.

**152.** 5 U.S.C. § 706(2)(A) (1982); *Charles River Park "A", Inc. v. HUD, supra* note 55, 171 U.S. App.D.C. at 294, 519 F.2d at 943; *NBC, Inc. v. FCC,* 170 U.S.App.D.C. 173, 194, 516 F.2d 1101, 1122 (1974), *cert. denied sub nom. Media Inc. v. NBC,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976); *Brawner Bldg., Inc. v. Shehyn,* 143 U.S. App.D.C. 125, 130, 442 F.2d 847, 852 (1971).

**153.** *Charles River Park "A", Inc. v. HUD, supra* note 55, 171 U.S.App.D.C. at 294, 519 F.2d at 943; see also *Chrysler Corp. v. Brown, supra* note 55, 441 U.S. at 318, 99 S.Ct. at 1726, 60 L.Ed.2d at 235.

**154.** "The decision of a trial or appellate court whether to grant or deny a preliminary injunction does not constitute the law of the case for the purposes of further proceedings and does not limit or preclude the parties from litigating the merits, unless there has been an order of consolidation pursuant to [Fed.R.Civ.P.] Rule 65(a)(2) ...." *Berrigan v. Sigler,* 162 U.S.App. D.C. 378, 382, 499 F.2d 514, 518 (1974) (footnotes omitted). See also *Industrial Bank v. Tobriner, supra* note 62, 132 U.S.App.D.C. at 54, 405 F.2d at 1324.

request disclosure. *See* 5 U.S.C. § 552(a)(4)(B) (1982). Because the submitter of information has no right of action under FOIA to enjoin disclosure, *see Chrysler Corp. v. Brown,* 441 U.S. 281, 290–94, 99 S.Ct. 1705, 1711–13, 60 L.Ed.2d 208 (1979), the de novo review section of that act is not available to submitters. Indeed, when the Administrative Conference of the United States surveyed the law regarding submitters' rights, it concluded that it would take an amendment of current law for submitters ever to have de novo review available to them, and the Conference recommended that Congress enact such amendments. *See* 1 C.F.R. § 305.82–1 (1983) (ACUS recommendation regarding submitters' rights under FOIA).

■ *Chrysler Corp. v. Brown,* 441 U.S. at 317–18, 99 S.Ct. at 1725–26, makes it clear that an information-submitter's right to judicial review of an agency's decision to disclose submitted records arises under the APA. Upon this point we are in agreement with Chief Judge Robinson. We differ as to the nature of the APA review available in this case.

In all cases challenging agency action under the APA, the "action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971) (quoting 5 U.S.C. § 706(2)(A) and citing *id.* § 706(2)(B)–(D)). The "focal point for judicial review" in such cases "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). *See also United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963) ("in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, ... consideration is to be confined to the adminis-trative record and ... no *de novo* proceeding may be held").

The APA contemplates de novo review of agency action only when "the facts are subject to trial de novo by the reviewing court," 5 U.S.C. § 706(2)(F) (1982). It would appear, therefore, that something other than the APA must make the facts "subject to trial de novo," but the Supreme Court has interpreted section 706(2)(F) to allow a reviewing court to create its own record when the agency's factfinding procedures are inadequate. *See Camp v. Pitts,* 411 U.S. at 141–42, 93 S.Ct. at 1243–44; *Overton Park,* 401 U.S. at 415, 91 S.Ct. at 823. *See also Doraiswamy v. Secretary of Labor,* 555 F.2d 832, 839 n. 39 (noting exception), 839–42 (rejecting de novo review) (D.C.Cir.1976) (Robinson, J.). Chief Judge Robinson finds that OFCCP's procedures were inadequate, and he rests his conclusions in part II of his opinion on that finding. We cannot agree.

The two seminal Supreme Court cases do not tell us what would make agency procedures inadequate; in neither *Camp v. Pitts* nor *Overton Park* were inadequacies found. Chief Judge Robinson has cited only one case holding agency factfinding procedures so deficient that de novo review under section 706(2)(F) was warranted, *see Porter v. Califano,* 592 F.2d 770, 782–83 (5th Cir.1979), *cited supra* at 738 n. 106, and that case involved substantial bias in an agency disciplinary proceeding. We have found no others. We can only conclude that the procedures must be severely defective before a court proceeding under the APA can substitute de novo review for review of the agency's record. *Cf. Upjohn Manufacturing Co. v. Schweiker,* 681 F.2d 480, 483 (6th Cir.1982) (if not provided by statute, de novo review "is the exception rather than the rule"). This is not such a case.

Under the regulations we are reviewing, the submitter is informed that his materials may be disclosed if he makes no claim of exemption. He is told to whom to claim exemption, he is allowed to submit any materials he wishes to support that claim,

and he is allowed to appeal the initial decision, again with extensive documentation and written argument. *See* 41 C.F.R. §§ 60–40.3(a), 60–60.4(d) (1983). These procedures were followed in this case, and they provide notice and the opportunity to present relevant evidence at a relevant time to responsible agency officials. Moreover, although the regulations require prompt administrative action, the time limits were stretched in this case. That circumstance, and the fact that both administrative tiers produced lengthy decisions, suggest that the decision makers were not totally oblivious of the companies' objections.

Chief Judge Robinson argues that "[n]either the agency's regulations nor its procedures offered the companies any guidance in focusing their presentations or documentation," *supra* at 740. The first-level decision maker, however, wrote at length to support his conclusion that most of the materials are exempt from disclosure. Surely that explanation provided some focus for the companies' appeal to the second-level decision maker.

He is also troubled by the fact that the second tier of review found additional materials non-exempt and that there was no administrative appeal from that decision available. *See supra* at 741. This hardly proves the procedures to be inadequate. Agency adjudication must become final at some point, and after that point aggrieved parties can resort to the courts. If the agency has not rationally supported its decision or has exceeded its lawful authority, the court can remand for further proceedings or reverse the agency outright. If the administrative record is inadequate for judicial review, the court can require supplementation by the agency in a variety of ways. *See Camp v. Pitts*, 411 U.S. at 142–43, 93 S.Ct. at 1244; *Overton Park*, 401 U.S. at 420–21, 91 S.Ct. at 825–26.

Finally, although an oral hearing might have facilitated the companies' presentations, the absence of such a hearing does not render the procedures inadequate, for the procedures in *Camp v. Pitts* were found adequate without having provided such a hearing, *see* 411 U.S. at 138–40, 93

S.Ct. at 1243. *See also, e.g., P & B Services, Inc. v. Cardenas*, 525 F.Supp. 1289, 1292–93 & n. 16 (D.D.C.1981) (no oral hearing, but procedures adequate).

In short, although we might not describe the agency's procedures as being the most effective or open, they were not closed, unfair, or otherwise inadequate to the task of developing a factual record, as well as a record of submitters' objections, based upon which one could decide rationally whether material is exempt from disclosure. *Cf. Upjohn*, 681 F.2d at 483 (prescribed procedures were followed and adequate, even if informal). For this reason, we disagree with Chief Judge Robinson's conclusion that de novo review was proper here under the APA.

Our conclusion that the District Court erred in not conducting its review based solely on the record that was before the OFCCP normally would lead us to vacate the court's actions and remand to the District Court. Under the circumstances of this case, however, we find it appropriate to affirm the preliminary injunction. Our own review of the administrative record convinces us that it would have been well within the discretion of the District Court for it to have granted preliminary relief even had it confined its review to that record. Rather than delay further by remanding for the District Court to rehash the issues of a preliminary injunction, we will affirm the injunction and remand for further proceedings.

Because we find the agency's factfinding procedures to have been adequate, our conception of the proceedings that should take place upon remand differs from Chief Judge Robinson's. First, it is not necessary for the agency to develop new procedures before this case is allowed to progress. Second, we would leave to the District Court's discretion the timing of any remand to OFCCP.

For example, the court may find it most appropriate to proceed to consider the merits of whether these materials are exempt. To do so, it may need to require OFCCP to supplement the administrative record. *See Camp v. Pitts*, 411 U.S. at 142–43, 93 S.Ct.

at 1244; *Overton Park*, 401 U.S. 420–21, 91 S.Ct. at 825–26. Once the District Court has a proper record, if it finds that some or all of the materials are exempt from disclosure, the concerns expressed in part III of Chief Judge Robinson's opinion would become acute. The District Court then would have to remand to OFCCP for the agency to exercise its discretion, with a statement of reasons, regarding disclosure of the material despite exemption.

Of course, upon remand the District Court is also free to proceed in any other manner it sees fit, consistent with both this opinion and the Supreme Court's decisions in *Camp v. Pitts* and *Overton Park*. We have written separately to emphasize these points: (1) de novo review was inappropriate at the preliminary injunction stage (2) the proper standard of review—at the preliminary stage, when treating the merits of whether the materials are exempt, and when evaluating any agency decision to disclose exempt materials—is provided by 5 U.S.C. § 706(2)(A)–(D) (1982); (3) new agency procedures are not necessary; (4) the District Court may require OFCCP to supplement the record if the record does not now provide a sufficient basis for judicial review.